Mr. Levine, a minute to get himself some water and we'll hear from him first. Good morning. May it please the Court. My name is Michael Levine on behalf of Appellant BancorpSouth. This case is as much about the outcome reached in the District Court as it is about the process by which the District Court reached its conclusion. This is an insurance coverage dispute and it's governed by Mississippi substantive law. And Mississippi law sets the process by which a District Court is to evaluate and assess an insurance company's duty to defend, or reimburse defense costs in this case, its duty to indemnify amounts paid in settlement or judgment, and assessing whether an insurance policy is in fact ambiguous. And the District Court did not follow the process in any of those three instances. But it looked to me as though Mississippi law is actually quite standard, you know, when it comes to this. You have to look at the four corners of the complaint and you have to look at the four corners of the insurance policy and you have to ask whether there's anything in the complaint that might give rise to a duty to defend. It certainly doesn't have to be the whole thing. I understand that. And if there is, there's a duty to defend and then at the back end, the duty to indemnify is typically narrower. So my problem is when you look even at the very introduction of all of the versions of the complaint, I'm looking right now at the second amended complaint, but I don't think it's different, is that it says this is a lawsuit arising from its unfair and unconscionable assessment and collection of excessive overdraft fees. So the question is why haven't the plaintiffs in the underlying litigation defined their own lawsuit as a lawsuit about the fees? And then I guess I'll add this other thought and you can respond to it. It doesn't shock me that an insurance company might want to exclude from coverage something that's so much in the power of the insured party, hear Bancorp, because Bancorp, if it charges excessive fees, it might say, oh, well, you know, but we're covered anyway by insurance and if it doesn't charge excessive fees, they don't have anything to worry about. But there's kind of a moral hazard built into this that it seems the insurance company may be trying to avoid. Well, with respect to your first question, Your Honor, you're absolutely correct. The law in Mississippi is not unlike the law in most other jurisdictions. It's standard, yeah. It is very standard. And you hit the nail on the head that it's very broad with respect to the duty to defend. And the district court, as Your Honor just noted, focused only on the introductory paragraph in assessing what the totality of the Swift complaint alleged. And that's error. There's much more at issue. There are 100 other paragraphs in that complaint and a number of causes of action, only one of which pertains to the recovery of allegedly wrongfully imposed fees. But there are lots of places, you know, well, first of all, the class definition is very tied into fees. Somebody has to have incurred an overdraft fee to be a member of the class. And then there are these other practices, such as the sequencing. I mean, these are all very troublesome practices, actually, sequencing practice and inaccurate information about how much is in somebody's account. But it always winds up with, and thus this is designed to maximize generation of overdraft fees. That's paragraph 42. 46 is the authorization hold and the extent to which they are used by Bancorp South to charge overdraft fees. I don't see any allegations that they're injuries independent of the fees. Like, you know, I thought I had $100 in my account, so I went and bought a product on sale and my purchase was denied or something. Right, but what the lawsuit does allege, Your Honor, excuse me, is that in addition to the alleged practices that gave rise to improperly charged fees, there were also practices and policies employed by Bancorp South, allegedly, that violated the Arkansas Consumer Protection Statutes that were allegedly deceptive and unfair, which gave rise to damages apart from restitution of the alleged fees. These damages were damages pursuant to the Consumer Protection Statutes, punitive damages pursuant to the Consumer Protection Statutes, and exemplary damages as well. Were those claims unrelated to overdraft fees? Well, they were. They related, Your Honor, to the practices and procedures employed by the bank generally. Specifically, in some of the allegations, the problems were with the deposit agreement, which was alleged to be a contract of adhesion. It was alleged to be unconscionable. There were allegations that the bank, through its deposit agreement, which is apart from any fees that were assessed, failed to inform, negligently failed to inform, Bancorp South's customers that it had an opt-out procedure that those customers could have employed. And because of those alleged failures or alleged wrongful acts. The statutory claim refers to statutory violations based on unfair business practices relating to the imposition of overdraft fees on consumers. And it also, in other paragraphs, Your Honor, relates to the contract of adhesion and imposing upon the Bancorp South customers a deposit agreement that was drafted with a slant toward benefiting the bank and injuring the customers in a number of ways, by not informing them of the sequence of their transactions, by not informing them of the accurate balance in their bank account, by not informing them of the manner in which transactions were being posted to their account on a statement-by-statement basis. And all of these allegations gave rise to causes of action, and more importantly under the insurance policy, categories of damage,  they are independent of the fees. If this swift action had gone to trial, a jury could have concluded that the plaintiffs were not entitled to restitution of any improperly charged fees and that they were only entitled to, say, punitive damages because of the nature of the deposit agreement or the manner in which the bank foisted, allegedly foisted, the deposit agreement upon its customers. So there was a plethora of available damage, which gets to the potentiality issue, which really is the issue that drives the duty to defend and which the district court ignored. Reading the allegations as they are in the complaint and the second amended complaint, which Your Honor pointed out are essentially the same, there was more than at least the potentiality. Well, the cleanest argument for you, I think, is what you turn to right away, the fifth claim for relief, the violations of the Arkansas statute, because I'm just looking at that right now and I don't, other than just the reference back to paragraphs 1 through 71, I don't see fees. You're talking about the resequencing practices. You're talking about concealment of facts, failing to disclose these practices, damages and declaratory relief. That's correct, Your Honor. I don't see overdraft in that count. That's correct. And as Your Honor noted and as the case in Mississippi, as it is in virtually every other jurisdiction, if even one claim in the complaint gives rise to the potential for coverage, then the entire complaint must be defended by the insurance company. And the district court did not follow that rule. So in your view, does this turn on the question whether a recovery is possible that is not somehow measured by the amount of overdraft fees? That's correct, Your Honor. That's correct. And it's the potential. Whether it actually occurred, whether it actually does occur, is immaterial to determining whether or not the insurance company has a duty to reimburse defense fees in this case. Now, with respect to the duty to indemnify, and before I jump to duty to indemnify, I do want to address your other question with respect to the moral hazard. Certainly an insurance company has the right to exclude categories of loss from the insurance policy. But the insurance company has a duty as the drafter of that policy, which was the case here, to draft the exclusion in clear and unambiguous terms. And there are at least three ways in which the exclusion in this case was not drafted in a clear and unambiguous way. And the first one, and we do address these issues in our brief, but the federal insurance company argues, we believe incorrectly, but they do argue and take the position that as long as the fees have an incidental relationship to the... Oh, this just says incidental versus arising out of? Yes. Right. And taking for the moment a federal's argument, if what they say is true, well, then the fee exclusion swallows up the entire insuring agreement in this case because the insuring agreement provides coverage for loss because of a claim for a wrongful act by the insured arising out of professional services. So your argument there, as I understand it, is, you know, since the bank is not in the business of being a charity, it actually charges something for everything. Well, that's true, but it's more tied to the insurance policy itself because the definition of professional services is defined as a service performed for a fee or because of a fee or in connection with a fee. So if what federal is saying is correct, that there need only be an incidental relationship between the fee and the claim, then the exclusion in this instance necessarily swallows the entire insuring agreement. There can be no coverage under the policy. Now, there are two other reasons why ambiguity should have been found in this policy. One, there is no punctuation in the exclusionary language, so we have no idea whether the exclusion for fees was intended to apply to the word loss, which is a defined term, or claim. Now, we've argued in our brief, Bank Corp South argues that the exclusion modifies the phrase loss, and if that's the case, then the exclusion, again, is in conflict with the definition of loss, which includes, among other things, attorney's fees. Yeah, that seems like a stretch, though. I mean, obviously you've got the underlying claim, and then you've got litigation expenses basically. I thought that was... Your Honor, and it may be, but it is plausible, and the test is whether there are two plausible arguments on a plain reading of the policy. I'm telling you, I didn't find it all that plausible an argument, but other points may be more so. Right. Well, I think the first point is enough, and you really don't have to get beyond that. To take it the way they construed it, and frankly... I think they go into something, too, about which fees were we talking about, like merchant fees they may pay for a visa or charge, I guess. They charge merchant fees for a visa. They pay other fees to the networks. Fees are paid. Fees are collected. We have no idea, under the language of this exclusion, under this insurance policy, which fees are at issue, and for that reason as well as overbroad. Doesn't that suggest that any fees are at issue? And, in fact, that's the language of the exclusion. Well, and that's the conclusion that the district court reached, and the reason that that's wrong is that under the rules of construction, in Mississippi and elsewhere, exclusions must be construed narrowly and in favor of coverage. So if there's a question, and here there clearly is a question, then the construction must have been in favor of Bancorp South. Why is there a question that says any fees or charges? Well, it's the any fees or charges, but what does that modify? Does it modify loss or does it modify claim? Without punctuation, there's no way to tell. So the benefit of the doubt had to go in favor of Bancorp South. The district court went the other way and said, well, this is just broad, and that's in direct violation of Mississippi law regarding the construction of insurance policies. I see that I'm almost out of my time. Yeah, you can save the rest of your time for rebuttal. Thank you. Mr. Wadley. So, Mr. Wadley, I'd like you to start with this fifth claim for relief, because even though much of the complaint seems to be focused on the overdraft fees and that the practices in question are adopted for the purpose of generating fees, it's not hard at all for me to imagine that, for example, re-sequencing debit purchases would independently harm a consumer and failing to give the consumer accurate information about how much money is in her account at any given time can be harmful, and I don't see fees anywhere in this fifth claim for relief. Your Honor, first, with respect to that, I'm looking at the version of the amended complaint that's in the appendix. Well, I'm looking at the second amended complaint. I'm going to go back to the one. That was just the class action complaint in the appendix, right? Yeah, and that one in paragraph 107 in the fifth claim for relief, it states that. Right, they got rid of 107, and it now doesn't appear in the, and I assume we are reviewing the operative complaint, which the court let in, which would be the second amended complaint. Well, in the district court, all the arguments were based on this original complaint, and that was the complaint that no argument was made in the district court based on this paragraph in this fifth claim for relief. Because there was a mutual agreement. There was a mutual agreement. The parties that the subsequent complaints did not materially alter the allegations. In fact, that's alleged in Bancorp South's complaint, is that the subsequent complaints were materially the same as the original complaint. Well, it includes in 115 the language that was in the old 107, but I'm just saying it goes on to say that the resequencing is an independent violation. Maybe it's just more clear as opposed to different. Perhaps, Your Honor. All I'm pointing out is that in the district court, this argument was never presented to the district court. We were arguing based on the initial complaint, which was conceded by Bancorp South, to be materially the same for purposes of the duty to defend as any subsequent iterations of that. So that's the operative complaint that everybody agreed on. It is, and to the extent that there's now an argument being injected that there was some amendment later that changed that, I would argue that that argument is waived. Beyond that, though, Your Honor. What about in the original complaint the fact that they're asking not just for restitution of the overdraft fees, that's in paragraph 2 of the, now I'm looking at the original complaint, but also punitive and exemplary damages? Well, they are asking for punitive or exemplary damages, Your Honor. Right, right. Actual damages in an amount according to proof. I mean, because they've made a lot of allegations, even in this original complaint, about delayed posting of transactions using debit cards so that people are being deprived of their money for a period of time, and failure to provide people with accurate balance information so that they can't plan their financial transactions with full information. There's a lot of information, even in this original complaint. It goes well beyond overdraft fees as a source of injury. Well, I don't agree with that, Your Honor. Why? What about not giving you credit for your deposits promptly? That's not an overdraft fee. It's depriving you of the use of your money. The allegation is that it caused an overdraft fee. The allegation is that they put a hold on the accounts, and then when they made a charge, they incurred an overdraft fee. When you look at every iteration of the complaint and you look at the paragraphs that pertain to what are the damages, I think, at least in the first complaint, they start at paragraph 58, where they talk about bank corp sales overdraft practices harmed plaintiff. And then he goes in and talks about specific instances in which he went and he made certain charges. They were re-sequenced, and he incurred overdraft fees. And then in paragraph 66. And multiple overdraft fees. Multiple overdraft fees, exactly. Because of this re-sequencing, which made him look as though he was overdrawn when he really wasn't. That's right. And then in paragraph 66, Swift states, the overdraft charges assessed plaintiff are representative of millions of dollars of overdraft fees that Bank Corp South wrongfully assessed and deducted from its customers' accounts. Then in paragraph 69, he states, thus, as a consequence of Bank Corp South's overdraft policies and practices, plaintiff and the classes have been wrongfully forced to pay overdraft fees. As you pointed out in Bank Corp South's opening argument, there's no allegation in here that the plaintiffs, because of one of these practices, incurred some harm independent of the overdraft fees. Now, did they have to do that in a situation where notice pleading is the rule? This is not a state court complaint. It's in the Northern District of Florida. Well, I think there has to be some allegation in there that triggers coverage under the policy. And you think lack of information about the amount of money in my bank account is not such an allegation? Not when it's tied directly to the imposition of a fee, when there's no harm that's alleged from that practice separate and apart from the fact that that caused me to incur a fee. So the bottom line here is when we talked about whether the test is incidental or caused by when we talk about arising from, I don't think it makes much of a difference in this case. So does your policy cover anything? Of course it covers. What does it cover? Everything has to do with, I mean, you don't give services away for free. You charge a fee for everything. Well, of course you do. But just because you charge a fee doesn't mean it's... So there's no policy coverage if it's a fee? The claim has to arise from the fee. It's the fee itself. So if, for example, the banks serve as trustees, and if they commit an error or omission in the conduct of acting as a trustee, then that's something that would be potentially covered under the policy. It's not that, oh, we were overcharged for your trustee services or that you did things in order to generate... But you would exclude that? You would exclude a claim that we were overcharged for your trustee services? That would be a claim that would arise out of a fee because we're claiming that, okay, you overcharged us. You engaged in certain practices in order to generate fees for yourself. Not that, oh, you made an error or omission in the manner in which you... Violated your fiduciary duty. Exactly, exactly. And so those are the types of things that are covered under these policies. It's not, you know, okay, you engaged in these practices that created unnecessary or improper or unlawful fees, which is what was alleged in this complaint. And getting back to what I was about to say before is whether we say caused by and incidental to, the point is that if Mr. Swift hadn't been charged overdraft fees, he wouldn't have filed this lawsuit. I mean, the lawsuit is filed because he was charged overdraft fees. That's the only harm that's alleged in the complaint that's resulted from these, quote-unquote, overdraft practices and policies. And so this is a lawsuit that arises out of a fee under any reasonable interpretation of the policy exclusion. Well, you can't be a class member unless you've paid a fee. Indeed. As I understand it. Exactly. So membership in the class is those who've paid fees. Right. And as you pointed out in the opening paragraph, I mean, it almost tracks the language of our exclusion. When you look at the opening paragraph, it says that this is a civil action seeking monetary damages, restitution, and declaratory relief from defendant Bank Corp South arising from its unfair and unconscionable assessment and collection of excessive overdraft fees. And then the complaint goes on for paragraphs to talk about the history of banks' creation and imposition of overdraft fees, the fact that they collected, what was it, over 30? It's enough to make you stop using banks. There's no doubt. I mean, you know, the issue of resequencing transactions and whatnot and holding them, that sounds very troubling. But the point is this is not the types of things that insurance companies cover. This is a moral hazard. Insurance companies don't say, you go out and try to generate as many fees as you can and charge fees, and then when you get caught, you can just turn to your insurance coverage, your insurance policy to cover it. That's not the types of things that are covered. Well, because the amount of the damages would be a function, you know, in one of the examples that was given, it could have been one $32 fee or it could have been five $32 fees depending on all of this. Right. So the amount of coverage would be very much in the hands of the insured. Indeed. Indeed. Right. We're not, this isn't a fortuitous event, in other words. This is something that the bank is in complete control of and something that they've done. And then briefly, turning to a couple of the procedural issues, as Your Honor pointed out, Mississippi isn't any different than any other state. The duty to defend is broader than the duty to indemnify. So if there's no duty to defend, that subsumes the duty to indemnify. And then with respect to, obviously, bad faith under Mississippi law, that's pretty clear that without coverage you can't have any bad faith. So unless the panel has any additional questions, I'll cede the rest of my time. Apparently not, so thank you very much. Okay. Thank you. Mr. Levine. Thank you. With respect to the second amended complaint, this matters before the court on a delivery review. But if you waived that in the district court, I mean, this is actually all about who's going to pay for this settlement, right? And the original one, which you said wasn't really very different, does not have those extra paragraphs that the second amended complaint puts in there. It doesn't, Your Honor. But the point is that this matters before the court on a de novo review. And moreover, this court has held that arguments that are based on a matter of law, if not raised in the district court or in the briefing for that matter in this court, are not waived. Unless they've been given a waiver. Well, we consider waiver principles even on de novo review. If somebody doesn't raise an argument, it's not fair to the other side to reinsert it into the case. But this isn't an argument. These are the facts. These are the facts. And it's the facts that drive whether there's coverage or not. You relied on the initial complaint in the district court. Well, the facts are the facts. You can't shift now. If, for example, Your Honor, the underlying case were still pending and the facts were changing, then there certainly wouldn't be an argument that facts were waived. Not if you've given it away. You affirmatively agreed with your opponent to proceed on the initial complaint. And that's what you were seeking coverage on. So you're stuck with that. Moving on, Your Honor, the issue on moral hazard, this is not a moral hazard exclusion. And if it were, it would be far narrowly drafted. The fact that this exclusion applies to any fees, as Your Honor pointed out a moment ago, indicates that this is not a moral hazard exclusion. If Bancorp South had filed a lawsuit seeking recovery of fees that it paid as opposed to charge, this exclusion presumably would still apply. And that can't be a moral hazard. That would be something far different. So getting to the Court's question to Mr. Wadley about, well, what does this policy cover? With an exclusion like the fee exclusion that's in this policy, it doesn't cover anything. And that's simply because everything the bank does, including acting as a trustee, as the Court used in its example, is for a fee. So if the test is that. But not every issue would relate to the fee. But it would be incidental to or even in consequence of. Because if the conduct, remember this is a wrongful conduct policy. It provides coverage when a wrongful conduct, where wrongful conduct is alleged to have occurred. If that conduct occurred either in performing the service or in not performing the service, as the policy says, that service has to be a service for a fee. And it necessarily would invoke the exclusion. Okay. Thank you very much. Thanks to both counsel. We'll take the case under advisement.